[No. 23712. Department Two. September 16, 1932.]

P. J. KIRWIN, *as Executor, Appellant,* v. CHARLES W. HALL *et al., etc., Respondents.*[1]

[1]Reported in 14 P. (2d) 62.

502

*P. J. Kirwin, John Wilkinson,* and *Everal Carson,* for appellant.

*McMaster, Hall & Schaefer,* for respondents.

BEALS, J.—Patrick and Ann Hough were for many years husband and wife, and residents of Clark county, Washington. December 18, 1925, Patrick Hough died, leaving a will which was shortly thereafter admitted to probate, defendants Charles W. Hall, C. W. Shumway and James J. O'Keane being named as executors thereof and trustees thereunder. After directing that his executors assemble the property belonging to his estate and manage the same, Mr. Hough directed them

"'. . . to pay over the net income from the same in regular monthly intervals to my beloved wife—Ann Hough, of Vancouver, Washington,—during the period of her natural life, if she should survive me.

"'I further direct that my said executors raise in whatever manner they may deem best out of my said estate at my decease—or after the decease of my wife, Ann Hough, if she should survive me—sufficient money to pay all my just debts and the debts of my wife—if there should be any—the expenses of the last illness

and funeral of myself or of my wife whoever of us two survive, and to do so without unnecessary delay and in such a way as to them may appear best, of the least sacrifice to the property.''

After making several small bequests, Mr. Hough bequeathed

'' . . . all the remainder of my property—real, personal and mixed, as hereinafter enumerated, and all other property I may be possessed of at the time of my decease—or at the time of the decease of my wife, Ann Hough, if she should survive me, to the purpose of establishing in Clark county, Washington, an Agricultural High School, and I direct my executors to apply all the funds and property remaining of my estate after the payment of the before mentioned bequests, expenses and debts to the establishment of such a high school as soon as practicable after my decease and that of my wife, if she should survive me, and to this purpose they are to apply the profits—all the proceeds thereof—whether real, personal or mixed, wherever situated that I may die seized or possessed of.''

In a later paragraph of his will, Mr. Hough provided that his executors should constitute the board of directors for the management of the ''Agricultural High School,'' for the establishment of which he provided in his will, and directed ''that they serve as such board of directors and as executors and without remuneration except necessary expenses.''

The tenth and eleventh paragraphs of Mr. Hough's will read as follows:

''Tenth: In the settling of the estate I would suggest that my executors do so with discretion, and exercise leniency where debtors might be greatly inconvenienced if required to meet their obligations exactly on time.

''Eleventh: I hereby appoint as my executors of this my Last Will and Testament, the following named persons: (1) C. W. Shumway, of Vancouver, state of Washington. (2) James J. O'Keane, of Vancouver, state of Washington. (3) Hugh L. Parcel, of Van-

couver, state of Washington, and in their capacity both as my executors and as directors of the said school I direct that wherever a vacancy occurs in their organization—from any cause whatsoever—the remaining two members choose a third to fill the vacancy, thus making the body self perpetuating. I also direct that in either or both capacities, in executors or directors of the school, they shall not be required to go bonds for the faithful performance of their trust in settling the estate and establishing and managing the school. I have implicit faith in the ability and integrity of these men, and it is to be understood that all directions hereinbefore or hereafter given to my executors and the teachers of the school shall apply with equal force to their successors.''

Defendant Charles W. Hall was named as an executor and trustee under Mr. Hough's will by a codicil executed several years after the original will, Mr. Parcel, one of the persons named in the latter as an executor thereof, having died.

At the time of his death, Mr. Hough was about eighty-five years old, his wife being approximately ten years his senior. Mrs. Hough survived her husband several years, and died leaving a will, naming plaintiff, P. J. Kirwin, as executor thereof. Mr. Kirwin, as executor of Mrs. Hough's will, instituted this action for the purpose of recovering judgment against the estate of Patrick Hough for six specific items which plaintiff contended were due Mrs. Hough's estate from the estate of her husband. The action was tried upon plaintiff's second amended complaint, which contained six causes of action.

In the first, it was alleged that defendants, as executors of Mr. Hough's will, had paid taxes against Mrs. Hough's separate property out of the income derived from the estate of Patrick Hough, it being plaintiff's contention that, under Mr. Hough's will, these taxes

should have been paid out of the corpus of Mr. Hough's estate and not out of the income arising therefrom.

The second, third and fourth causes of action involved, respectively, the funeral expenses of Mrs. Hough, an item of sixty-four dollars, representing a charge for nursing incurred by Mrs. Hough during her last illness, and approximately four hundred fifty dollars hospital expenses incurred sometime prior to Mrs. Hough's death. Of course, if these items, under Mr. Hough's will, should have been by his executors paid out of the corpus of his estate, the amount which Mrs. Hough would have received under her husband's will, as income from his estate, would have been increased.

In his fifth cause of action, plaintiff alleged as follows:

"That during the course of the administration and carrying on of the estate of Patrick Hough, deceased, by the defendants as executors and trustees, they made a charge of $10.00 per month office rental to the firm of McMaster, Hall & Schaefer, and deducted the same from the net income of the estate of Patrick Hough, deceased, thereby diminishing the amount that Ann Hough was entitled to under the terms of the will, which deduction was contrary to the provisions of the will, and this plaintiff alleges that there is now due the total sum of $360.00 to the plaintiff as executor, on account of this deduction for office rent which the defendants as such executors have wrongfully charged up against the net income of the estate."

By his sixth cause of action, plaintiff alleged:

"(2) Plaintiff alleges that on or about the 8th day of August, 1927, and for a long time prior thereto and continuing up until the date of the death of Ann Hough, she was an old lady, more than ninety years of age, uneducated, unable to read or write, practically without any eyesight, decrepit, childish, extremely feeble and in her dotage, and was subject to the will of any person or persons who sought to influence her, especially if such person or persons occupied a relation

of trust or confidence toward her; that during all of said time the trustees herein referred to occupied a fiduciary relation toward her in that they were her trustees for the distribution of the income, and if necessary a portion of the corpus of the estate of Patrick Hough.

"That in the course of their expenditure of money and in the care which was given to the said Ann Hough they employed one Lela E. Gardner to act for them in administering to her comfort in her old age.

"(3) That notwithstanding the feeble and decrepit condition of Ann Hough and her lack of understanding and her incapacity to transact any business whatsoever the trustees referred to herein, in violation of their trust and by the exercise of undue influence secured from Ann Hough a purported consent, under which purported consent the said defendants paid to themselves the sum of $3,000.00.

"This plaintiff further alleges that they secured the right to pay the $3,000.00 by persuasion, undue influence, and in violation of their trust and on account of the decrepit condition of the said Ann Hough, and because of her inability to transact or understand business, and by taking advantage of the trust and confidence which existed between them and the said Ann Hough because of the fiduciary relationship that existed between them and her, said payment being unfair to the purpose and intent of the will of Patrick Hough, deceased.

"(4) That demand has been made by this plaintiff for restitution to the estate of Ann Hough of the amount of $3,000.00 wrongfully paid, and notwithstanding such demand the defendants have neglected and refused to pay the same and are now withholding the same from this plaintiff."

Defendants answered the complaint, alleging, in regard to plaintiff's first cause of action, that they had paid all of the taxes therein referred to, at Mrs. Hough's request, out of the income from the Patrick Hough estate, save the sum of $292, which latter sum they had paid under authority of a judgment of the

superior court adjudging the same to be a debt due from Ann Hough existing at the time of her decease. As to the second and third causes of action, defendants alleged that they paid the items therein mentioned out of the corpus of the Patrick Hough estate. Answering plaintiff's fourth cause of action, defendants alleged that they had paid the items therein referred to out of the accumulated net income of the estate of Patrick Hough, during the lifetime of Ann Hough and at her instance and request. Answering plaintiff's fifth cause of action, defendants alleged that, in the course of the administration of the trust established by the will of Patrick Hough and

" . . . subsequent to the administration of his estate, the business of the trust was transacted through the offices of McMaster, Hall & Schaefer, attorneys at law, of which firm one of the defendants is a member, and that it was necessary in handling the business of the trust to write many letters, make collections, receive and disburse money, draw legal documents and conduct litigation, all of which required the use of considerable quantities of postage, stationery and other office supplies and required the services of stenographers and the use of the offices, and that the monthly expense so incurred exceeded the sum of $10.00, and that the defendants thereupon authorized the payment of $10.00 per month to apply on the said office expenses, and that such office expenses, together with the other expenses of the administration of the trust, have been deducted from the gross income of the estate in calculating the net income thereof payable to said Ann Hough."

Answering plaintiff's sixth cause of action, defendants admitted that Ann Hough was an aged lady, afflicted with rheumatism and suffering from poor eyesight, and denied any improper action on their part.

Plaintiff, in his reply, denied the affirmative allegations contained in defendants' answer, and the cause

proceeded to trial. Upon the close of plaintiff's case, defendants moved for an order of nonsuit as to all six of plaintiff's causes of action, which motion the trial court granted, and entered an order of dismissal, from which plaintiff appeals.

Respondents have moved to strike the transcript of the pleadings, etc., and appellant's abstract of record and brief, on the ground that the same were not filed within the time limited by the rules of court. Respondents also move to dismiss the appeal. All the steps necessary to give this court jurisdiction on the appeal having been seasonably taken by appellant, and the delay in filing the transcript, etc., in this court not having been so considerable as to warrant the granting of respondents' motions to strike and their motion to dismiss the appeal, the same are denied.

It clearly appears from Mr. Hough's will, as argued by appellant, that it was Mr. Hough's intention that his trustees take no steps towards the establishment of the Agricultural High School until after the death of Mrs. Hough, if she survived her husband, and, in any event, not until all of the debts left by the Houghs, or either of them, were paid.

Appellant argues that an order entered by the superior court directing that the trustees pay out of the Patrick Hough estate the taxes against Mrs. Hough's property for the last half of the year 1928 constitutes the law of the case, and that it must now be held that it has been adjudicated that the taxes against Mrs. Hough's property were debts owed by her and should have been paid out of the corpus of the Patrick Hough estate. We are unable to follow appellant in this argument, and hold that this matter was, at the time of the trial of this case in the court below, open for judicial determination. Upon the facts here pre-

sented, the authorities cited by counsel in this connection are not in point.

■ We are satisfied that, under the will of Patrick Hough, taxes due against Mrs. Hough's separate realty were not payable out· of the corpus of the Patrick Hough estate. The evidence does not show, nor is it contended, that any taxes were paid· by respondents which were not proper charges against Mrs. Hough's property. The matter of the burden of proof under the pleadings will be considered in connection with appellant's fourth cause of action. These taxes were properly paid out of the net income from the Patrick Hough estate and charged against Mrs. Hough. The court properly sustained respondents' motion for a nonsuit as to appellant's first cause of action.

■ In regard to plaintiff's second and third causes of action, by which appellant seeks to recover for the Ann Hough estate payments made by respondents on account of Mrs. Hough's funeral and a bill of nursing, covering services rendered during Mrs. Hough's last illness, respondents contend that these items were, in fact, paid out of the corpus of the Patrick Hough estate. Appellant argues that, in order to sustain the trial court's ruling granting respondents' motion for nonsuit as to these causes of action, this court must indulge in some presumption in respondents' favor.

It is, of course, true that, if appellant made a *prima facie* case, respondents should have been put upon their proof, but careful examination of the record made by appellant under his second and third causes of action convinces us that he failed to make a *prima facie* case in regard to the items which are the bases of these two causes of action, and that the trial court correctly granted respondents' motions for nonsuit.

Appellant concedes that, if respondents under Mr. Hough's will are not required to account to appellant

for the net income accruing from the Patrick Hough estate up to the date of Mrs. Hough's death, and if income, accrued but not collected by the trustees, or collected after the last settlement with Mrs. Hough prior to her death, does not belong to the Ann Hough estate, then the trustees had disbursed something over seven hundred dollars more than they had received, and that, consequently, this amount had been paid out of the corpus of the Patrick Hough estate. It does not appear that respondents had unduly delayed in paying to Mrs. Hough income from her husband's estate which they had received, or that they were dilatory in collecting the same.

In considering the question now under discussion, the terms of the will of Patrick Hough must be considered. Mr. Hough did not bequeath to his wife the net income arising from his estate up to the date of her death, but he directed his executors and trustees to pay over the net income from his estate in regular monthly intervals to Ann Hough during the period of her natural life, and provided that, in case she should survive him, her debts should be paid at her death out of the corpus of his estate. Mr. Hough's will must be construed by its four corners. His intention is manifest. He desired to provide ample care for his wife in case she should survive him. The Agricultural High School was to be the ultimate beneficiary of his bounty. It does not appear that Mr. Hough desired to enrich the estate of his wife at the expense of the high school. He provided for the payment of her debts upon her decease.

We hold that, under Mr. Hough's will, net income arising from his estate coming into the hands of the trustees after the date of a monthly settlement between them and Mrs. Hough, and before her death, assuming that that event occurred prior to the date

for the next monthly payment, would not belong to the estate of Ann Hough, but would remain part of the corpus of the Patrick Hough estate. The same rule would apply to money which became due to the Patrick Hough estate before Mrs. Hough's death but was paid to respondents thereafter. A different question would have been presented had Mr. Hough bequeathed to his wife for her life the net income from his estate, or had he directed that his executors pay such income to her up to the date of her death.

As to appellant's fourth cause of action, expenses in connection with Mrs. Hough's hospitalization during the period she was suffering from an injured knee, appellant contends that respondents improperly paid these expenses out of the net income arising from the Patrick Hough estate, and that the same should have been paid out of the corpus of the estate as debts due from Mrs. Hough. It clearly appears that these bills were paid during Mrs. Hough's lifetime. In their answer, respondents pleaded that they paid these bills at the special instance and request of Mrs. Hough, and appellant argues that, under the evidence and the pleadings, with particular reference to respondents' allegation last above referred to, respondents should have been put upon their proof.

It is true that if, under the evidence, appellant should prevail unless respondents proved the hospital and nursing bills were paid at Mrs. Hough's special request, the trial court should not have granted a nonsuit as to this cause of action; but we are satisfied, from an analysis of Mr. Hough's will and of the testimony introduced by appellant in support of this cause of action, that respondents properly paid these items out of the net income accruing from the Patrick Hough estate, which income, under Mr. Hough's will, was to be paid to Mrs. Hough.

It is true that, by the pleadings in connection with this cause of action, respondents assumed some affirmative burden, but the evidence introduced by appellant does not call on them to longer bear that burden. Respondents' plea was not strictly a confession and avoidance, such as an admission of the execution of a promissory note and a plea of payment, but, under the pleadings as made up, it was necessary for appellant to himself establish a *prima facie* case of liability on the part of respondents. This he failed to do.

During the lifetime of Mrs. Hough, in computing the net income accruing from the estate of Patrick Hough, respondents charged to the estate ten dollars a month, or a total of three hundred sixty dollars, under the title of office expense. In his complaint, appellant sought to recover the total amount of these payments, and alleged that this amount was paid to the firm of McMaster, Hall & Schaefer, of which firm respondent Hall is a member. Appellant contends that, under the pleadings and the evidence, the burden of proof remained with respondents to prove the reasonableness of this expenditure, and that the trial court erred in granting respondents' motion for a nonsuit as to this cause of action.

It must be remembered that this is not an action for an accounting. Appellant brought this action to recover six specific items which he contends are due the estate of Ann Hough. In his fifth cause of action, appellant further alleged that, by the ten dollars a month charge, the amount which Ann Hough was entitled to receive under her husband's will was diminished, and that the "deduction was contrary to the provisions of the will."

It clearly appears from the record before us that the estate of Patrick Hough owned a large amount of property, being of the value of approximately seventy

thousand dollars, and that this property consisted of stocks and bonds, notes, mortgages and real estate, some of the latter rented and some subject to contracts of sale. Mr. Hough in his will expressly referred to the net income from his estate, and in the eighth paragraph referred to the payment of "necessary expenses" by his executors.

Courts are not required to close their eyes to the fact that the administration of an estate such as Mr. Hough's is expensive. No other disbursements appear in respondents' account, which is an exhibit in the case, which show charges which properly come under the head of office expense. Some disbursements under this classification were, of course, necessary. The record contains nothing which even indicates that the charge was excessive or greater than the actual cost of doing the work. We hold that appellant failed to establish, under his fifth cause of action, a *prima facie* case sufficient to put respondents upon their proof in connection with the ten dollars a month expense charge.

In his sixth cause of action, plaintiff seeks to recover three thousand dollars, which he alleges that respondents paid to themselves under a "purported consent" which appellant contends respondents secured from Ann Hough by the exercise of undue influence, she being then feeble and decrepit and incapable of transacting any business because of mental weakness. Appellant also alleges the fiduciary relation between respondents and Ann Hough, and that the payment of which appellant complains was contrary to the purpose and intent of the will of Patrick Hough. Appellant, then, instead of seeking an accounting, chose to attack another specific charge made by respondents against the net income accruing from the

Patrick Hough estate. Appellant alleges a "purported consent" and referred to such a consent in his testimony.

It may be assumed, as argued by appellant, that, in dealings between a fiduciary and the beneficiary, the burden rests upon the person occupying the fiduciary capacity to show that dealings between himself and the beneficiary resulting in his profit were in good faith, and that no advantage was taken. *Hemrich v. Hemrich,* 117 Wash. 124, 201 Pac. 10. Indeed, this rule is too well established to require citation of authority. The question here presented is whether or not appellant, as executor of Mrs. Hough's will, introduced evidence under his sixth cause of action sufficient to put respondents upon their proof in connection with the matter concerning which Mrs. Hough, during her lifetime, raised no question.

It is true that Mrs. Hough was very aged, but it is also true that she was unquestionably a very bright old lady, and, in our opinion, the testimony introduced by appellant falls far short of showing that she was laboring under any appreciable degree of mental incapacity. Sometime after signing the consent which appellant attacks, Mrs. Hough injured her knee and was for some time confined to a hospital. Appellant offered testimony to the effect that, during her period of hospitalization, Mrs. Hough showed mental weakness. This was after the execution of the "consent," and we agree with the trial court that the evidence introduced and offered had no bearing upon the question to be determined.

The trial court had the advantage of seeing and hearing the witnesses who testified as to Mrs. Hough's mental and physical condition. In this connection the court, in summing up the evidence, said:

"So far as the mental competency of the old lady is concerned, I think that practically all the testimony tends to bear out the fact that she was in many respects wiser than the witnesses who are attacking her mental ability."

In considering the question here presented, we have disregarded the abstract and have relied upon the statement of facts itself. We are satisfied that the trial court correctly held that the evidence failed to show any mental incapacity on the part of Mrs. Hough. Appellant's complaint negatives the thought that respondents received more than Mrs. Hough authorized them to receive. It must be held that appellant failed to introduce, under his sixth cause of action, evidence sufficient to put respondents upon their proof.

In this connection, it may be noted that appellant has moved to strike a supplemental transcript filed by respondents, in which is set forth appellant's first amended complaint. In this complaint, appellant pleaded *in haec verba* the consent which appellant alleged Mrs. Hough executed. This complaint was not offered in evidence on the trial, and, in determining the questions here presented, we have disregarded the same. No costs on account of the supplemental transcript above referred to will be taxed in respondents' favor.

Finding no error in the record, the judgment appealed from is affirmed.

TOLMAN, C. J., MILLARD, HOLCOMB, and MAIN, JJ., concur.